Argued and submitted May 3, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 8, 2006

## Nancy POWELL, Individually and as Guardian Ad Litem for Remington Powell, *Respondents on Review,*

*v.*

## Stan BUNN, Superintendent of Public Instruction, Oregon Department of Education and Portland Public School District No. 1J, *Petitioners on Review.*

## (CC 010403557; CA A117310; SC S52657, S52659)

142 P3d 1054

Kistler, J., dissented and filed an opinion.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioners on review Stan Bunn and Oregon Department of Education. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Bruce L. Campbell, Portland, argued the cause for petitioner on review Portland School District No. 1J. William H. Walters and Jeffrey D. Austin, of Miller Nash LLP, filed the brief.

Charles F. Hinkle, ACLU Foundation of Oregon, Inc., Portland, argued the cause and filed the brief for respondents on review. With him on the brief was Andrea R. Meyer, ACLU Foundation of Oregon, Inc.

David J. Hunnicutt, Oregonians in Action Legal Center, Tigard, filed the briefs for *amicus curiae* Pacific Legal Foundation.

Thomas V. Dulcich and Sara Kobak, of Schwabe Williamson & Wyatt P.C., Portland, filed the brief for *amicus*

*curiae* Boy Scouts of America. With them on the brief were Timothy R. Volpert and P. Andrew McStay, Jr., of Davis Wright Tremaine LLP, Portland, and George A. Davidson and Carla A. Kerr, *pro hac vice*, of Hughes Hubbard & Reed LLP, New York.

GILLETTE, J.

Kistler, J., dissented and filed an opinion.

## GILLETTE, J.

We are called on in this case to decide whether school district personnel can be said to "discriminate" (as that word is used in the applicable statute) against a student if they require that student to listen to a message about a club or activity in which the student cannot participate because of the student's or his or her parents' religious beliefs. A divided Court of Appeals concluded that evidence that school district personnel assisted in or facilitated the presentation of a message of that kind could support a discrimination claim and, therefore, further concluded that the Superintendent of Public Instruction erred in dismissing a discrimination complaint based on those facts. *Powell v. Bunn*, 198 Or App 21, 108 P3d 37 (2005). We allowed the petitions for review of the school district and the superintendent and, for the reasons that follow, now reverse the decision of the Court of Appeals and the judgment of the circuit court.

The salient facts are undisputed.[1] Petitioners in this case are Remington Powell and his mother, Nancy Powell.[2] The Powells are atheists. In 1996, Remington was a first-grade student at Harvey Scott Elementary, a Portland public school. During that school year, and from time to time in the following years, the school permitted representatives of the Boy Scouts to make presentations during the lunch period— *i.e.*, during school hours—at a time when and in a place where the school required children to be present. During those presentations, the Boy Scouts representative encouraged boys to join the organization, informed them when and where the meetings would be, and invited interested boys to

[1] The school district has raised an issue concerning the evidence that this court should consider in this case, that is, whether the record properly includes only what was in the administrative record developed in the proceeding before the superintendent or whether it also includes new evidence presented to the trial court in the subsequent judicial review proceeding. Because we find that the evidence adduced in the judicial review proceeding is of the same character as that already in the administrative record, we conclude, as did the Court of Appeals, that the later-adduced evidence is not essential to our decision. Accordingly, we need not decide the issue whether, in a case like the present one, the trial court erred in permitting petitioners to introduce evidence on judicial review beyond what was before the superintendent when he made his decision.

[2] Nancy Powell appears in this case in her own capacity and as guardian *ad litem* for Remington.

talk with him further, either in the lunchroom or outside on school grounds. School district personnel facilitated those presentations by quieting the children, by directing their attention to the Boy Scouts representative, and, on occasion, by helping the Boy Scouts representative to fasten hospital-style bracelets, imprinted with information about a later, off-site informational meeting, on the wrists of interested boys. In addition, school district personnel from time to time distributed Boy Scouts flyers in the classroom and included information about the Boy Scouts in the school newsletter, which the school distributed to all students to take home to their parents.[3]

The Boy Scouts require all members to profess a belief in a theistic God. However, the Boy Scouts representative did not inform students of that fact during the presentations that took place at the school. Instead, the Boy Scouts representative told the children that anyone could join. In addition, there was no evidence of any mention of religion whatsoever in any presentation, flyer, or school newsletter material. The school district did not specially select or invite the Boy Scouts to make a presentation. Instead, the Boy Scouts are one of a number of organizations that make periodic use of the school as a venue in which to provide information relating to their organizations' activities.

After Nancy Powell learned that Remington's school had allowed the Boy Scouts to make presentations during school hours, she complained to the school and to the school district. She asserted that subjecting Remington to the Boy Scouts presentations was discriminatory in light of that organization's religious membership criterion and Remington's consequent ineligibility to join that organization due to his atheism. She asserted that Remington was negatively affected by those presentations.

---

[3] In 2000, the school district issued new guidelines to school administrators governing presentations by community groups, including the Boy Scouts, during noninstructional hours, that permit the dissemination of flyers and allow brief presentations during lunch, but that prohibit school district personnel from assisting in the placement of bracelets on children's wrists.

The Powells eventually filed a discrimination complaint against the school district under ORS 659.850 and its implementing rules, OAR 581-021-0045 to 581-021-0049.[4] ORS 659.850 provides:

> "(1) As used in this section, 'discrimination' means any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on age, disability, national origin, race, marital status, religion or sex.

> "(2) No person in Oregon shall be subjected to discrimination in any public elementary, secondary or community college education program or service, school or interschool activity or in any higher education program or service, school or interschool activity where the program, service, school or activity is financed in whole or in part by moneys appropriated by the Legislative Assembly.

> "(3) The State Board of Education and the State Board of Higher Education shall establish rules necessary to insure compliance with subsection (2) of this section * * *."

The district school board rejected the Powells' complaint.

The Powells then appealed the school district's decision to the superintendent, again asserting that permitting the Boy Scouts to make presentations to students during school hours violates ORS 659.850. That appeal was governed by OAR 581-021-0049, which provides, in part:

> "(1) Districts shall adopt written procedures for the prompt resolution of complaints of discrimination. Persons may, after exhausting local grievance procedures or 90 days (whichever occurs first) appeal in writing to the Superintendent of Public Instruction. The Superintendent shall review the local school district procedures and findings of fact to determine if proper procedures were followed and what action if any shall be taken. In making this determination, the Superintendent may decide:

---

[4] At the time that the Powells initiated the present action, ORS 659.850 was numbered as ORS 659.150. The statute was renumbered in 2001 but, with the exception of one minor change not relevant here, it has remained unchanged since enactment in 1975. For convenience, we use the current designation in this opinion.

"(a)   No substantial evidence exists for the charges of discrimination, and no further action will be taken;

"(b)   Discrimination may exist, and conciliation will be attempted to reach agreement by both parties."

Pursuant to his obligations under OAR 581-021-0049, the superintendent investigated the Powells' complaint and allowed both the Powells and the school district to submit documents for his review. Ultimately, the superintendent issued a 17-page order in which he concluded that no substantial evidence existed for the charge of discrimination and that no further action would be taken.

The superintendent's decision was an order in other than a contested case, as that phrase is used in Oregon's Administrative Procedures Act, ORS 183.310 to 183.690. Accordingly, the Powells then sought review in the circuit court as provided in that act for such orders. *See* ORS 183.484 (describing judicial review of orders of that kind). Under ORS 183.484(5),[5] the circuit court's review of the superintendent's order is for substantial evidence and errors of law. At the conclusion of the circuit court's review, that court concluded that the superintendent had "abused his discretion" in determining that there was no substantial evidence of discrimination; it therefore remanded the matter to the superintendent for further action on the Powells' complaint.

The superintendent and the school district appealed the trial court's ruling to the Court of Appeals. That court concluded that the circuit court had erred in reviewing the

---

[5] ORS 183.484(5) provides that, in its review of an order in other than a contested case:

"(a)   The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"* * * * *

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

superintendent's order under ORS 183.484 for abuse of discretion, rather than determining whether substantial evidence supported the superintendent's factual findings and whether the superintendent committed errors of law with respect to his legal conclusions.[6] With those corrections, however, the Court of Appeals nonetheless affirmed the judgment of the circuit court.

■  Before we turn to our analysis here, it is important to emphasize what is involved in this case and what is not. Plaintiffs in this case do *not* contend that the school district's actions as described above violate constitutional or statutory bans on the establishment of religion.[7] Neither does this case concern whether the school district *should* allow the Boy Scouts or any other organization to recruit members during the lunch period at an elementary school. Instead, the only issue before this court is whether the facts surrounding the school district's conduct amounts to "discrimination," as that term is defined in ORS 659.850, by a public school or school district. We turn to that issue.

ORS 659.850(1) defines "discrimination" to mean

> "any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on age, disability, national origin, race, marital status, religion or sex."

To determine whether Remington was "subjected to discrimination" under ORS 659.850(2), we use the familiar methodology outlined in *PGE v. Bureau of Labor and Industries*, 317

---

[6] We recognize, of course, that the apparent statutory contrast between "substantial evidence" in ORS 183.484(5)(c), on the one hand, and "erroneously interpret[ing] a provision of law," ORS 183.484(5)(a), on the other, is a false one. Lack of substantial evidence to support a finding of fact is itself an error of law.

[7] Plaintiffs earlier filed an action against the superintendent and the school district in which they challenged the school district's actions under the state constitution and under ORS 327.109, which sets out procedures for responding to a complaint that the school district "sponsors, financially supports or is actively involved with religious activity." The Court of Appeals ruled in favor of the superintendent and the school district in that case on the ground that the school district's actions did not rise to the level of an unconstitutionally excessive entanglement of government with religion, *Powell v. Bunn*, 185 Or App 334, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003). No party has raised any issue respecting claim preclusion arising out of the earlier case, and we do not address it.

Or 606, 610-12, 859 P2d 1143 (1993). That is, we first examine the text of the statute, in context, in an effort to discern the intent of the legislature. *Id.* at 610-11. If the meaning of the statute is clear at that level of analysis, further inquiry is unnecessary. *Id.* at 611.

■       Preliminarily, we observe that ORS 659.850(2) is phrased in the passive voice—"no person in Oregon shall be subjected to discrimination." From that, we understand that the school district may not permit *anyone* to discriminate against a person in any public school program, service, or activity. The prohibition thus applies both to the conduct of school district personnel as well as to the conduct of representatives of community organizations such as the Boy Scouts. It follows that, to the extent that the conduct at issue was in a "public elementary * * * education program or service, school or interschool activity," ORS 659.850(2), it is irrelevant to our analysis whether particular acts were done by school district personnel or by a Boy Scouts representative. If the school district permitted Remington to be subjected to discrimination, it violated ORS 659.850.

■       Turning to the second part of the prohibition, ORS 659.850(2) covers discrimination "in any public elementary, secondary or community college education program or service, school or interschool activity * * *." We think that it is clear that, as pertinent here, that means that there can be no discrimination in any public elementary or secondary or community college education program, in any public elementary or secondary or community college education service, and in any public elementary or secondary or community college school or interschool activity. Thus, under ORS 659.850, even community groups may not discriminate against any person in any of those programs, services, or activities.[8] However, it

_____

[8] It follows from the foregoing that we reject the school district's argument that only actions of school district personnel can violate ORS 659.850. The school district contends that the statutory remedies provided for violations of ORS 659.850 are remedies to be imposed against the school district, including the possibility of "withholding of all or part of state funding," ORS 659.855(1), and that the nature of that statutory remedy—as well as the wording of ORS 659.850 itself—indicates that the focus is on whether the school district discriminated and not on what someone else has done or might do. But, as we have explained, the wording of ORS 659.850 indicates to us that the school district violates that statute if someone is "subjected to discrimination" in a public school program, service, or activity, irrespective of who is doing the discriminating.

is equally important to point out that ORS 659.850 does not prohibit discrimination by community groups in their activities that are *not* public school programs, services, or activities.

Classroom time and the school's lunch period clearly are, at the least, school "activities." Therefore, if either handing out a Boy Scouts flyer or making a brief presentation to children encouraging boys to join the Boy Scouts amounts to discrimination as ORS 659.850(1) uses that word, then such discrimination took place "in [a] public elementary * * * school * * * activity * * *." Likewise, printing and disseminating the school newsletter is a school activity. Therefore, if including information about Boy Scouts meetings in the school newsletter amounts to discrimination, then such discrimination took place "in [a] public elementary * * * school * * * activity * * *." By the same token, however, the fact that the school district permits a community group to provide flyers to be handed out in the classroom or to make a presentation during lunch period or to include information in a school newsletter does not transform all the activities of that community group, including those that take place off-site or outside school hours, into a "public elementary secondary * * * school * * * activity."

With the foregoing considerations in mind, we return to the term "discrimination." Once again, "discrimination" is defined in ORS 659.850(1) to mean

> "any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on age, disability, national origin, race, marital status, religion or sex."

To "differentiate" means "to make different: mark or show a difference in." *Webster's Third New Int'l Dictionary* 630 (unabridged ed 2002). Thus, the school district discriminated against Remington if it committed an act, or permitted the Boy Scouts to commit an act, that subjected Remington to treatment different from that afforded other children because of his religion, or if it committed an act or permitted the Boy Scouts to commit an act that operated to treat Remington differently from other children on that basis.

The Powells have asserted that the school district's conduct in the present case falls under the first part of that definition—that is, it "unreasonably differentiates treatment" based on religion. In this case, however, the evidence is undisputed that Boy Scouts representatives and school personnel distributed flyers and the school newsletter containing information about the Boy Scouts to all the children without any mention of or regard to their religious affiliation or lack thereof. Likewise, those persons made lunchroom presentations to all children; those presentations were neutral in content and made no mention of religion or a religious requirement for joining the Boy Scouts. Neither did the use of identifying wristbands introduce a religious element into the presentation. The actual (but undisclosed) existence of a religious aspect to the Boy Scouts organization does not change the foregoing facts. In short, all the evidence points to the same conclusion: neither school district personnel nor the Boy Scouts representative "differentiated treatment" among school children by disseminating the flyers or the school newsletters, by making presentations during the lunch period encouraging boys to join the Boy Scouts, or by using wristbands to identify those who expressed an interest. Rather, all children were treated in precisely the same way.

The Powells have argued, and the Court of Appeals in effect agreed, that simply exposing Remington to a message about a group that he cannot join or an activity in which he cannot participate because of his and his parents' religious beliefs subjects him to differential treatment. As the Court of Appeals stated:

> "All students must listen to the introductory presentation, but only those students who meet a religious test may accept the invitation to join. Because eligibility to join the Scouts depends on religious belief, there is substantial evidence that the district thus subjects persons to differentiated treatment in a school activity on the ground of religion."

198 Or App at 40. The Powells elaborate, arguing that "it is the *very activity that takes place in the school*—the recruitment of members—that is discriminatory." (Emphasis in original.)

Saying it, however, does not make it so. The recruitment of members, as carried out at the school, patently is *not* discriminatory. On the contrary, the undisputed evidence is that the Boy Scouts directed its recruitment efforts at *all* children. It is in the later enrollment in the organization that the Boy Scouts differentiate among those who do not profess a belief in a deity and those who do. That enrollment, however, is not done by the school district, nor is it done in any public elementary school activity. In the same vein, the fact that there is a religious component to enrollment in the Boy Scouts organization does not establish that *any* information about the Boy Scouts handed out at school or printed in a school newsletter—even information that omits any mention of a religious connection—is discriminatory or, more to the point, that the school discriminates by participating in or permitting the dissemination of that information.

The Court of Appeals suggested that it does not matter that the Boy Scouts' discrimination against certain children does not occur during school hours or on school property. According to the Court of Appeals, that discrimination is "in a school activity" because "the precipitating conduct—Scouts recruitment—occurred at school and in the course of a school activity, even though the ultimate impact of that conduct— the exclusion of Remington from membership in the Scouts— did not occur at the same place and time." 198 Or App at 41. ORS 659.850, however, does not address "precipitating conduct" that only later, at some other place and time, may ripen into discrimination. The statute is concerned only with discrimination in a public school program, service, or activity. Here, the school district neither directly discriminated against Remington in its treatment of him nor permitted the Boy Scouts to discriminate against him in any such public school program, service, or activity.[9]

---

[9] The Court of Appeals made what it apparently thought was a decisive point in a footnote in which it asserted that the analysis that it employed in the present case is no different from what would be employed were the school district to permit the youth auxiliary of the Ku Klux Klan to make a presentation to students, so long as that group did not refer to limiting participation to white Protestants. The court stated, "We doubt that, in that situation, either the superintendent or the dissent would fail to find substantial evidence that the district discriminated against racial minorities, Catholics, Jews, and Muslims." 198 Or App at 42 n 11.

Identifying a particularly odious group and its doctrine does not, however, serve as a basis for reading the words of the statute in ways that those words will

The Powells assert, alternatively, that the school district's conduct is "fair in form but discriminatory in operation," in contravention of the second part of the definition of "discrimination" set out in ORS 659.850(1) ("discrimination" means "act that is fair in form but discriminatory in operation"). But, as we have explained, nothing that occurred *in any public school program, service, or activity* was discriminatory *at all*. The Powells therefore gain no more from their reliance on the second half of the definition than they did from their reliance on the first half.

By its conduct in this case, the school district has done nothing more than permit a community group to provide nondiscriminatory information to parents and students, who may then voluntarily decide the extent of their involvement, or noninvolvement, in such activities. The act of providing that information (or facilitating the provision of that information) does not amount to "discrimination in any public elementary, secondary or community college education program or service, school or interschool activity under ORS 659.850." Put differently, the undisputed evidence shows that, in this case, neither the school district nor the Boy Scouts discriminated "in any public elementary, secondary or community college education program or service, school or interschool activity." It follows that the superintendent did not err in finding that there was no substantial evidence of discrimination under ORS 659.850. The contrary conclusion of the Court of Appeals was in error.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.**, dissenting.

Harvey Scott Elementary School permitted the Boy Scouts to come into the school during school hours and recruit its students. Not only did the school give the Scouts access to its students, it required the students to attend the

not support. That is, notwithstanding the inflammatory nature of the comparison, we fail to see how the wording of ORS 659.850 prohibits an organization, even a hate group, from making a neutral presentation to students, or how such a presentation, even by a hate group, necessarily would subject a person to differential treatment or discrimination under ORS 659.850.

Scouts' recruiting session. During that session, the Scouts invited the children to join the Scouts. They .did not say, although it was true, that only those children who shared the Scouts' religious views could join. That distinction only became apparent later on. I would hold that an apparently facially neutral offer that, in operation, turns out to discriminate on the basis of religion violates ORS 659.850(2). I respectfully dissent from the majority's contrary holding.

ORS 659.850(2) provides that no person "shall be subjected to discrimination in any public elementary * * * program or service [or] school * * * activity." For the purposes of that subsection,

> " 'discrimination' means any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on * * * religion[.]"

ORS 659.850(1). In holding that no statutory violation occurred, the majority notes that, when the Boy Scouts made their recruitment offer during the school lunch period, the offer ostensibly was open to all children. Only later, off the school grounds, did the children whom the Scouts had recruited learn that the offer, in fact, extended only to those children whose religious beliefs agreed with the Scouts. It follows, the majority concludes, that no discrimination occurred "*in* [a] public elementary * * * program or service [or] school * * * activity" (emphasis added); according to the majority, the discrimination occurred only at a later time, apart from any school activity.

The majority's conclusion is difficult to square with the statutory definition of discrimination. That definition is not limited to overt acts of discrimination that occur in a public school program, service, or activity, as the majority's opinion appears to assume; it also includes "any act that is fair in form but discriminatory in operation." ORS 659.850(1). That definition assumes that an act that occurs in a public school program, service, or activity may appear neutral when made. It also recognizes that that apparently neutral act may turn out to be discriminatory in operation.

The Scouts' offer falls squarely within that statutory definition. There is no dispute that, on its face, the offer to join the Scouts was "fair in form." It appeared to be open to all the elementary school children without limitation. However, that apparently neutral offer was, in fact, limited at the time the Scouts made it to those school children who shared the Scouts' religious views. That offer, both in fact and in operation, divided the elementary school children into two groups: those whose religious views agreed with the Scouts' views and those whose views did not. The fact that the discriminatory nature of the offer only became apparent later neither diminishes its discriminatory nature nor takes it out of the definition of discrimination in ORS 659.850(2). That definition of discrimination recognizes that an apparently neutral act may, in operation, turn out to be discriminatory precisely as the Scouts' offer did.

Because I would hold that the act of making the offer during a mandatory school session subjected the elementary school children to discrimination in a public school activity in violation of ORS 659.850(2), I respectfully dissent.[1]

---

[1] Because the school required the children to attend the recruiting session, this case does not present the question whether permitting the Scouts to make the same offer during a voluntary recruiting session would subject the children to discrimination within the meaning of ORS 659.850. Nor does it raise the question whether presenting information about the Scouts or other groups as part of the school curriculum would violate ORS 659.850.