10 July 14, 2016 No. 46

IN THE SUPREME COURT OF THE
STATE OF OREGON

EASTERN OREGON MINING ASSOCIATION;
Guy Michael; and Charles Chase,
*Petitioners on Review,*

*v.*

DEPARTMENT OF ENVIRONMENTAL QUALITY;
Dick Pederson, in his capacity as Director of
the Department of Environmental Quality; and
Neil Mullane, in his capacity as Administrator of
the Water Quality Division of
the Department of Environmental Quality,
*Respondents on Review.*

(CC 10C24263)

WALDO MINING DISTRICT,
an unincorporated Association;
Thomas A. Kitchar; and Donald R. Young,
*Petitioners on Review,*

*v.*

DEPARTMENT OF ENVIRONMENTAL QUALITY;
Dick Pederson, in his capacity as Director of
the Department of Environmental Quality; and
Neil Mullane, in his capacity as Administrator of
the Water Quality Division of
the Department of Environmental Quality,
*Respondents on Review.*

(CC 11C19071)

(CC 10C24263, 11C19071; CA A156161; SC S063549)

On review from the Court of Appeals.*

Submitted on the briefs June 9, 2016.

James L. Buchal, Murphy & Buchal LLP, Portland, filed
the briefs for petitioners on review. With him on the briefs
was William P. Ferranti, Portland.

_____

* Appeal from Marion County Circuit Court, Courtland Geyer, Judge. 273 Or
App 259, 361 P3d 38 (2015).

Michael A. Casper, Assistant Attorney General, Salem, filed the briefs for respondents on review. With him on the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson Whitehead, Assistant Attorney General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and Lagesen, Justice pro tempore.**

LANDAU, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

_____
   ** Nakamoto, J., did not participate in the consideration or decision of this case.

**LANDAU, J.**

Petitioners are a group of miners who operate small suction dredges in Oregon waterways. In this case, they challenge the lawfulness of an order of the Department of Environmental Quality (DEQ) adopting a general five-year permit that regulates that type of mining. By the time the challenge reached the Court of Appeals, however, the permit had expired. The agency then moved to dismiss petitioners' challenge on the ground that it had become moot. The Court of Appeals agreed and dismissed. Petitioners now seek review of the dismissal arguing that their case is not moot. In the alternative, they argue that, if it is moot, their challenge nevertheless is justiciable under ORS 14.175 because it is the sort of action that is capable of repetition and likely to evade judicial review.

We conclude that the petitioners' challenge to the now-expired permit is moot. But we agree with petitioners that it is justiciable under ORS 14.175. We therefore reverse the decision of the Court of Appeals and remand for further proceedings.

The relevant facts are not in dispute. Petitioners are an association of miners, a mining district, and a number of individual suction dredge miners. Suction dredge mining entails vacuuming up streambed material through a hose, passing the material through a sluice box that separates out any gold, and returning the remaining material back to the waterway. DEQ asserts that it has authority to regulate suction dredge mining under state and federal law. Among other things, DEQ asserts that suction dredge miners must obtain a National Pollutant Discharge Elimination System (NPDES) permit, pursuant to section 402 of the federal Clean Water Act. 33 USC § 1342 (2012).

In 2005, DEQ adopted an administrative rule setting out its authority to regulate suction dredge mining and the requirements for engaging in that activity. The order was denominated as a "general permit" and is known as the "2005 permit." Both environmentalists and miners—including petitioners—challenged the lawfulness of the 2005 permit. The miners' principal contention was that suction dredge mining is subject to the exclusive regulatory

authority of the Army Corps of Engineers, pursuant to section 404 of the Clean Water Act. 33 USC § 1344 (2012).

The Court of Appeals agreed with the miners in part, concluding that a portion of the discharge from suction dredge mining is subject to the exclusive authority of the Corps, but also concluding that another part of that discharge remains subject to DEQ's authority under section 402 of the federal statute. *Northwest Environmental Defense Center v. EQC*, 232 Or App 619, 223 P3d 1071 (2009). This court granted review. *Northwest Environmental Defense Center v. EQC*, 349 Or 56, 240 P3d 1097 (2010).

Before briefing could be completed, however, the five-year 2005 permit expired in 2010. DEQ moved to dismiss the review as moot. This court allowed the motion and dismissed. *Northwest Environmental Defense Center v. EQC*, 349 Or 246, 245 P3d 130 (2010). Meanwhile, DEQ issued a new five-year general permit in 2010, known as the "2010 permit." This time, however, DEQ issued the permit as an order in other than a contested case, not as an administrative rule. *See generally* ORS 468B.050(2) (authorizing department to issue general permits either as an administrative rule or as an order in other than a contested case). The 2010 permit contained the same provisions requiring compliance with section 402 of the federal Clean Water Act.

Petitioners challenged the validity of the 2010 permit. Because the permit had been issued as an order in other than a contested case, they were required to do so by first bringing an action in circuit court. ORS 183.484 (conferring "[j]urisdiction for judicial review of orders other than contested cases" on Marion County Circuit Court and the circuit court for the county in which the petitioner resides or maintains a principal business office). The petition advanced three claims: (1) DEQ lacks authority under the federal Clean Water Act to regulate suction dredge mining; (2) DEQ lacks authority under state law to regulate such mining; and (3) DEQ's 2010 permit was not supported by substantial evidence in the record.

The Northwest Environmental Defense Center (NEDC) also filed a petition for review in circuit court. In 2012, however, NEDC and DEQ settled their differences. At

that point, petitioners amended their petition to add a claim for relief under the Uniform Declaratory Judgment Act seeking a declaration that DEQ lacked authority to enter into such a settlement agreement.

In 2013, the parties filed cross-motions for summary judgment. The trial court concluded that, with respect to petitioners' contention that the 2010 permit violated federal law, there remained issues of fact. With respect to all other issues, though, the court granted DEQ's motion. After that, the parties stipulated to entry of judgment in favor of DEQ on all claims to facilitate appellate review. The trial court entered judgment in January 2014.

In February 2014, petitioners appealed. They asked for expedited consideration of their appeal, but the request was denied. The appeal proceeded through briefing and oral argument and was taken under advisement. While still under advisement, the five-year 2010 permit expired. DEQ issued a new five-year permit, effective through January 1, 2020. The department then moved to dismiss the appeal as moot. Petitioners argued that the appeal was not moot and that, in any event, it was capable of repetition and likely to evade review and so still justiciable under ORS 14.175.

The Court of Appeals concluded that, in light of the expiration of the 2010 permit, petitioners' challenge to the validity of that permit had become moot. *Eastern Oregon Mining Assoc. v. DEQ*, 273 Or App 259, 262, 361 P3d 38 (2015). The court further concluded that petitioners' challenge was not likely to evade review. The court explained that, because petitioners could "easily use their work" in challenging the prior permits, they could "challenge the 2015 permit in the circuit court in more streamlined litigation." *Id.*

In the meantime, the legislature enacted a moratorium on suction dredge mining for five years, beginning January 2, 2016. Or Laws 2013, ch 783. The moratorium, however, does not apply to all waterways in the state in which suction dredge mining may occur.[1] The precise extent

---

[1] The moratorium applies to "any river and tributary thereof" that contains essential anadromous salmonid habitat or naturally reproducing populations of

to which the moratorium would prohibit suction dredge mining in Oregon is not clear. But DEQ and petitioners agree that the moratorium does not appear to apply to all suction dredge mining in the state.

Petitioners sought review in this court. This court allowed review, limiting the issues on review to three questions: (1) whether the case is now moot; (2) whether, if moot, the case is nevertheless justiciable under ORS 14.175; and (3) whether, even if justiciable under ORS 14.175, the case should be dismissed because of the legislative moratorium. We address each of those questions in turn.

1.  *Is the case moot?*

In *Couey v. Atkins*, 357 Or 460, 520, 355 P3d 866 (2015), we explained that Article VII (Amended) of the Oregon Constitution does not require the court to dismiss moot cases, at least not in "public actions or cases involving matters of public interest." But we cautioned that merely because the constitution does not require dismissal in such cases does not mean that the court will not continue to dismiss moot cases as a prudential matter. *Id.* Existing case law on the subject of mootness offers guidance concerning the circumstances under which the court will continue to dismiss moot claims. *Id.* at 469.

In *Brumnett v. PSRB*, 315 Or 402, 848 P2d 1194 (1993), the court explained that cases "in which a court's decision no longer will have a practical effect on or concerning the rights of the parties [] will be dismissed as moot." *See also Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012) (An appeal is moot when a court decision will no longer have a "practical effect on the rights of the parties."). The rule applies to judicial review proceedings involving challenges to administrative agency action.

---

bull trout, except where populations do not exist because of "a naturally occurring or lawfully placed physical barrier." Or Laws, ch 783, § 2(1). DEQ estimates that up to 30 percent of all stream miles fall within the scope of the moratorium. It acknowledges that the "percentage of those stream miles that are suitable for suction dredge mining, however, is unclear." A group of miners challenged the constitutionality of the moratorium in federal court, but the court concluded that the law amounts to a reasonable environmental regulation that, precisely because it does not appear to ban mining completely, is not preempted by federal law. *Bohmker v. State*, 2016 WL 1248729, ___ F Supp 3d ___ (D Or 2016).

*Homestyle Direct, LLC v. DHS*, 354 Or 253, 260-61, 311 P3d 491 (2013). In this case, petitioners' principal challenge is to the validity of the 2010 permit. That permit has expired. A judicial declaration as to the validity of the 2010 permit can have no possible practical effect on the rights of the parties in relation to that permit.

Petitioners contend that, notwithstanding the expiration of the 2010 permit, a ruling on their underlying legal contentions will affect them. In their view, in issuing the 2010 permit, DEQ adopted an erroneous legal position that continues to adversely affect them, given that it is the basis for the more recently adopted 2015 permit. The problem with the argument is that it ignores the fact that theirs is a claim for judicial review of *a specific agency order*—the 2010 permit—not some abstract legal position that DEQ has taken. Under the Administrative Procedure Act, a challenge to an order in other than a contested case entitles a court to "affirm, reverse, or remand *the order*" that is the subject of the challenge. ORS 183.484(5)(a) (emphasis added). In this case, there is no longer any order in effect for a court to affirm, reverse, or remand.

The same result and reasoning apply to petitioners' claim under the Uniform Declaratory Judgment Act. Claims under that statute also are subject to dismissal if a judicial decision will not have a practical effect on the rights of the parties. *Couey*, 357 Or at 470; *see also Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995) (relief under the Uniform Declaratory Judgment Act is available "only when it can affect *in the present* some rights between the parties") (emphasis in original). In this case, petitioners rely on that statute to challenge the validity of a settlement agreement concerning the implementation of the 2010 permit. Any judicial decision as to that challenge would not affect the rights of any of the parties. The permit to which the settlement agreement otherwise would have applied has expired.

 2. *Is the action nevertheless justiciable under ORS 14.175?*

ORS 14.175 provides:

 "In any action in which a party alleges that an act, policy or practice of a public body * * * is unconstitutional or is

otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)   The party has standing to commence the action;

"(2)   The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)   The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

The statute thus provides that, even when a judicial decision would no longer have a practical effect on the rights of the parties, a court may issue the decision if the parties can satisfy each of the three stated requirements. *Couey*, 357 Or at 477.

DEQ does not contest the first two of the three statutory requirements. The only issue is whether petitioners' challenge to the five-year 2010 permit is of a sort that is likely to evade review before the permit expires. The Court of Appeals concluded that petitioners' challenge is not likely to evade review because petitioners could "easily use their work" in challenging the prior permits and, as a result, could "challenge the 2015 permit in the circuit court in more streamlined litigation." *Eastern Oregon Mining Assoc.*, 273 Or App at 262.

In so concluding, the court erred. As we explained in *Couey*, the focus of ORS 14.175(3) is whether the general type or category of challenge at issue is likely to evade being fully litigated—including by appellate courts—in the future, not whether a specific case might avoid becoming moot through expedited consideration or some other mechanism:

"The fact that there is a possibility that a particular case could obtain expedited consideration is beside the point. ORS 14.175 applies to types or categories of cases in which it is 'likely' that such challenges will avoid judicial review."

357 Or at 482.

DEQ argues that, in any event, the type or category of case at issue is not the sort that is likely to evade review. DEQ begins by observing that some federal courts have adopted a "rule of thumb" that two years is an adequate time to obtain a final judicial decision on a challenge to a federal administrative agency order. *See, e.g.*, *Fund for Animals, Inc., v. Hogan*, 428 F3d 1059, 1064 (DC Cir 2005). The time it takes to fully litigate a challenge to a federal administrative agency order or rule, however, may be different from the time it would take to challenge an Oregon agency's order or rule under the Oregon Administrative Procedure Act. Moreover, the "rule of thumb" that DEQ identifies does not appear to have been uniformly followed by federal courts, particularly in cases involving challenges to NPDES permits. *See, e.g.*, *Trustees for Alaska v. EPA*, 749 F2d 549, 555 (9th Cir 1984) (holding that challenge to expired five-year NPDES permits originally issued eight years earlier was capable of repetition, yet evading review); *Montgomery Environmental Coalition v. Costle*, 646 F2d 568, 582-83 (DC Cir 1980) (holding that "we have no difficulty" concluding that challenge to expired five-year NPDES permit was capable of repetition, yet evading review).

DEQ asserts that "a review of this court's administrative law cases supports the conclusion that five years is sufficient time to fully litigate such a case" as this one. In support, the department cites *Broadway Cab LLC v. Employment Dept.*, 358 Or 431, 364 P3d 338 (2015); *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 341 P3d 701 (2014); and *Noble v. Dept. of Fish and Wildlife*, 355 Or 435, 326 P3d 589 (2014), each of which took approximately four years to fully litigate a challenge to an administrative agency decision.

None of those cases involved a challenge to an order in other than a contested case, however. In cases involving challenges to orders in other than a contested case, an additional layer of judicial review is required over and above what is ordinarily required for challenges to administrative agency rules or orders. *See generally Norden v. Water Resources Dept.*, 329 Or 641, 645-46, 996 P2d 958 (2000) (describing procedure for challenging orders in other than contested cases). That extra layer of judicial review makes

a difference. Even a cursory review of cases involving that process reveals that it is (perhaps unfortunately) quite common for them to take five years or substantially longer to fully litigate.[2]

Moreover, although the particular circumstances of the case before the court do not determine whether it is the sort of claim that is likely to evade review, the difficulty of obtaining timely judicial review of orders in other than a contested case is nowhere better illustrated than this very case, which now has become moot not once, but twice, and even then after the parties requested—and were denied— expedited consideration. We conclude that petitioners' challenge is of the sort that is likely to evade review within the meaning of ORS 14.175(3).

The fact that the parties may have established the three requirements for review under ORS 14.175 does not end the matter. As we explained in *Couey*, the statute *permits* a court to issue a judgment on the validity of the challenged act or policy, but it does not require a court to do so. 357 Or at 522. The statute "leaves it to the court to determine whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case." *Id*. In this instance, the Court of Appeals did not reach that issue, having determined that this is not the sort of case to which ORS 14.175 even applies. We therefore remand the case for the appropriate exercise of the discretion that the statute affords.

DEQ argues that, if we determine that petitioners' challenge qualifies for judicial review under ORS 14.175, we should exercise our discretion to limit the scope of that

---

[2] *See, e.g.*, *Noble v. Oregon Water Resources Dept.*, 356 Or 516, 340 P3d 47 (2014) (five years); *Gearhart v. PUC*, 356 Or 216, 339 P3d 904 (2014) (six years); *Powell v. Bunn*, 341 Or 306, 142 P3d 1054 (2006) (six years); *Norden*, 329 Or at 644 (six years); *Mendieta v. Division of State Lands/McKay*, 328 Or 331, 987 P2d 510 (1999) (five years); *Coalition for Safe Power v. Oregon Public Utility Com'n*, 325 Or 447, 939 P2d 1167 (1997) (eight years); *Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 919 P2d 1172 (1996) (five years); *Pacific Northwest Bell Telephone Co. v. Eachus*, 320 Or 557, 888 P2d 562 (1988) (seven years); *Hardy v. Land Board*, 274 Or App 262, 360 P3d 647 (2015) (seven years); *Bridgeview Vineyards, Inc. v. State Land Board*, 258 Or App 351, 309 P3d 1103 (2013) (14 years); *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 108 P3d 95 (2005) (eight years).

review to the issue whether the issuance of the 2010 permit violates the federal Clean Water Act. But whether to limit judicial review is, as DEQ itself notes, a matter of discretion under ORS 14.175. As in *Couey*, that discretion is not for a reviewing court to exercise in the first instance. 357 Or at 522.

3. *Should the case be dismissed because of the enactment of a moratorium?*

There remains the issue whether we should even allow for the exercise of discretion under ORS 14.175 because of the enactment of the legislative moratorium on suction dredge mining until 2021. As we have noted, however, the extent of the moratorium is not clear. The parties agree that, whatever that extent may be, it does not apply to all waterways in the state where suction dredge mining may take place. Under the circumstances, we see no reason to conclude that the enactment of the moratorium precludes the exercise of discretion to issue a judgment on the claims at issue in this case.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.