ARMSTRONG, P.J.
*752 By initiative petition, the voters of Douglas County enacted a county ordinance that limits the number of consecutive terms that Douglas County commissioners are permitted to serve. Morgan, an incumbent Douglas County commissioner, sought re-election despite being disqualified from re-election by the ordinance. Relators, who include Morgan and other Douglas County voters, petitioned the circuit court for a writ of mandamus to require defendant, the Douglas County clerk, to place Morgan on the ballot for the May 2016 primary election. Parker, the chief petitioner for the initiative measure, intervened in the mandamus proceeding. The circuit court granted a writ of mandamus-based on the court's determination that the ordinance violates Article VI, section 8, of the Oregon Constitution -and entered a general judgment in favor of relators. Intervenor appeals the judgment, seeking reversal of it and a declaration that the county ordinance is constitutional. For the reasons that follow, we affirm.
Morgan was elected to the Douglas County Board of Commissioners in 2008 and was re-elected as a commissioner in 2013. In November 2014, the voters of Douglas County approved Measure 10-134, codified as Douglas County Code section 2.04.060 (the ordinance), which limits the service of county commissioners to "no more than 8 years consecutively."
In September 2015, Morgan filed a declaration of candidacy with the county clerk seeking election to a third term as county commissioner in the May 2016 primary election. Relying on the ordinance, the county clerk refused to accept Morgan's declaration. In response, relators filed a petition under ORS 34.110 for a writ of mandamus directing the clerk to place Morgan's name on the ballot. Relators asserted that the ordinance violates Article VI, section 8, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution and, hence, that the ordinance could not be enforced to disqualify Morgan from the ballot.
In December 2015, the circuit court issued a writ of mandamus commanding the county clerk to "[a]ccept Relator *753 Morgan's Declaration of Candidacy * * * and place Relator Morgan on the May 17, 2016 primary election ballot as a candidate for the office of Douglas County Commissioner." The court issued the writ based on its conclusion that the ordinance violates Article VI, section 8, and it entered a general judgment in favor of relators. However, after the writ issued, Morgan withdrew her candidacy for county commissioner. Intervenor appeals seeking reversal *751 of the general judgment and a declaration that the ordinance is constitutional.[1]
We begin with the question of mootness. Generally, "[c]ases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot." Brumnett v. PSRB , 315 Or. 402, 406, 848 P.2d 1194 (1993). As noted, Morgan withdrew her candidacy for county commissioner after the writ of mandamus had issued and, thus, a decision in this case will have no practical effect on Morgan's or the other relators' rights. The case is, therefore, moot.
However, in matters involving public interest, we may exercise our discretion to review an otherwise moot case if (1) the party who commenced the action had standing to commence it, (2) the act challenged is capable of repetition or the policy continues in effect, and (3) the challenged act or policy is likely to evade judicial review in the future. See ORS 14.175 ; Couey v. Atkins , 357 Or. 460, 520, 355 P.3d 866 (2015) (Oregon Constitution does not impose "justiciability limitations on the exercise of judicial power in public actions or cases involving matters of public interest"). Both parties urge us to exercise our discretion under ORS 14.175 to review this case, and we agree that it is appropriate for us to do that.
First, Morgan had standing to bring this challenge. Second, although Morgan withdrew her candidacy, the ordinance continues in effect, and its application is capable of repetition in future elections for county commissioner.
*754 And, finally, any challenge to this initiative is likely to evade judicial review, because election cycles are short and the judicial process can be lengthy. See Couey , 357 Or. at 478-83, 355 P.3d 866 (applying the "capable of repetition, yet evading review exception" to an election-related challenge). Because this case concerns an initiative measure enacted by the voters of Douglas County that imposes term limits on a public office, and therefore concerns a matter of public importance, we exercise our discretion to review the case. See, e.g. , Eastern Oregon Mining Assoc. v. DEQ , 285 Or. App. 821, 832-35, 398 P.3d 449, rev. allowed , 362 Or. 175, 406 P.3d 612 (2017).
We turn to the merits of the appeal. We review the circuit court's ruling on the constitutionality of the ordinance for legal error. See State v. Mercer , 269 Or. App. 135, 137, 344 P.3d 109, rev. den. , 357 Or. 299, 353 P.3d 594 (2015) (citing State ex rel. Caleb v. Beesley , 326 Or. 83, 87, 949 P.2d 724 (1997) ).
The circuit court granted the writ of mandamus on the ground that the ordinance imposing term limits on the position of county commissioner violates Article VI, section 8, "because it attempts to alter the constitutionally established qualifications for the office of County Commissioner." Article VI, section 8, which has been amended by the people several times, states:
"Every county officer shall be an elector of the county, and the county assessor, county sheriff, county coroner and county surveyor shall possess such other qualifications as may be prescribed by law. All county and city officers shall keep their respective offices at such places therein, and perform such duties, as may be prescribed by law."
Or. Const., Art. VI, § 8.
Intervenor challenges the circuit court's conclusion that Article VI, section 8, provides the exclusive set of qualifications for county commissioner-viz ., that a candidate must be "an elector of the county"-and that that provision is an express or implied prohibition against term limits. First, intervenor contends that the office of county commissioner is not subject to section 8 because it is not one of the specific officers named in that section. Rather, intervenor argues, the office of county commissioner qualifies as an "other officer" under Article VI, section 7, which states, "Such other *755 county, township, precinct, and City officers as may be necessary, shall be elected, or appointed in such manner as may be prescribed by law ." (Emphasis added.) Second, intervenor argues that, even if section 8 applies to the office of county commissioner, the ordinance does not violate *752 that provision because term limits are not qualifications at all but, rather, are restrictions that address the "length and sequence of tenure in office." Third, intervenor argues that there is no indication that the drafters of the Oregon Constitution intended that qualifications for "other officers" of counties be limited to that of elector. Lastly, intervenor contends that the adoption of county home-rule authority in Article VI, section 10, and the enactment of ORS 203.035 make the qualifications and tenure of county offices "matters of local concern" that are subject to county legislative action notwithstanding section 8.
In response, relators maintain that the office of county commissioner is an office of the county subject to the constitutional qualifications established in section 8. As such, the qualification that candidates be electors of the county is exclusive, and it may not be changed or supplemented without constitutional authorization. Relators point to the 1956, 1972, and 1974 amendments to section 8, arguing that the voters intended the provision to establish the exclusive constitutional qualification for "other county officers," while allowing for legislative supplementation of those qualifications with respect only to the offices of county assessor, sheriff, coroner, and surveyor. Relators dispute intervenor's contention that term limits are not qualifications for public office but, rather, are restrictions on tenure in office, citing numerous federal and state cases that have concluded otherwise. Lastly, relators dispute intervenor's home-rule argument, observing that Douglas County has not adopted a home-rule charter and, even if it had, that home-rule authority does not exempt a county from complying with other provisions of the state constitution.
We begin with intervenor's argument that term limits are not "qualifications" for public office but, rather, are limits on tenure in office. Intervenor points to the Oregon Constitution's county home-rule provision, Article VI, section 10, arguing that it "expressly distinguishes between *756 qualifications and tenure in the very context of discussing county officials." That provision provides, in part, "A county charter shall prescribe the organization of the county government and shall provide directly, or by its authority, for the number, election or appointment, qualifications, tenure , compensation, powers and duties of such officers as the county deems necessary." Or. Const., Art. VI, § 10 (emphasis added). Intervenor's position is that Morgan was qualified for the office of county commissioner, but was "temporarily ineligible to maintain tenure by reason of her prior service." (Emphasis in original.) We disagree.[2]
Term limits do not merely regulate the manner in which county officers are elected or appointed. Rather, they serve to disqualify certain incumbent candidates from holding office. That is, a prerequisite for the position of county commissioner is that the candidate cannot have served two consecutive terms as county commissioner immediately pre-ceding the election. Tenure, on the other hand, refers to the length of the term of an office; it is not a characteristic that a candidate must possess as a prerequisite to seeking and holding public office. Although term limits relate to tenure in the sense that they affect the total length of time that an individual may hold office, they also limit an individual's ability to seek public office. Because term limits have the effect of barring certain individuals from seeking and holding office, we conclude that they impose a qualification for office.
Our conclusion is in line with the majority of other courts, including the United States Supreme Court, that have dealt with that question. See U.S. Term Limits, Inc. v. Thornton , 514 U.S. 779, 828, 832-33, 115 S.Ct. 1842, 131 L.Ed. 2d 881 (1995) (rejecting argument that term limits are not qualifications but, rather, are "permissible exercise[s] of state power to regulate the 'Times, Places and Manner of holding Elections' " because the framers of the federal constitution intended the Elections Clause to grant states authority to *757 create procedural regulations, not to provide them with a "license to exclude classes of candidates from federal office"); *753 Alaskans for Legislative Reform v. State , 887 P.2d 960, 965 (Alaska 1994), overruled on other grounds by Kodiak Island Borough v. Mahoney , 71 P.3d 896 (Alaska 2003) (rejecting plaintiffs' contention that term limits are "preconditions" and not "qualifications" for office, because they "categorically disqualify certain candidates for a period of eight years"); Gerberding v. Munro , 134 Wash. 2d 188, 200, 949 P.2d 1366 (1998) (initiative that imposed term limits on certain state offices was a qualification for office, not simply a restriction related to ballot access). But cf. Minneapolis Term Limits Coalition v. Keefe , 535 N.W.2d 306, 309 n. 2 (Minn. 1995) (based on the "unique language of [the] Minnesota Constitution," which distinguishes between qualifications for office and eligibility requirements for office, term limits constitute eligibility requirements rather than qualifications for office).
Having determined that term limits impose qualifications for office, we turn to whether the Douglas County ordinance violates Article VI, section 8. We begin with the Supreme Court's observation in State ex rel. Powers v. Welch , 198 Or. 670, 672-73, 259 P.2d 112 (1953), that "[t]he law is well established that, where a state constitution provides for certain officials and names the qualifications for such officers, the legislature is without authority to prescribe additional qualifications unless the constitution, either expressly or by implication, gives the legislature such power." In line with that observation, the court held that a statute that mandated that only registered professional engineers or registered professional land surveyors were eligible to hold the office of county surveyor violated Article VI, section 8, which at that time provided that the sole qualification for the applicable county positions was that the person be an elector of the county.[3] Thus, unless Article VI, section 8, does not apply to the ordinance or the Oregon Constitution gives the county, "either expressly or by implication," the power to impose additional qualifications for the office of county commissioner, the ordinance violates Article VI, section 8.
*758 Intervenor contends, however, that the qualifications for county commissioner are governed by Article VI, section 7, and not by Article VI, section 8. Article VI, section 7, applies to county officers other than the county clerk, treasurer, and sheriff and provides that officers other than the clerk, treasurer, and sheriff "shall be elected, or appointed in such manner as may be prescribed by law ." Or. Const., Art. VI, § 7 (emphasis added). Intervenor argues that the drafters of the Oregon Constitution did not intend to limit the qualifications for "other" county officers to that of elector, as provided in Article VI, section 8, but, rather, intended that counties have the authority to regulate matters of county concern, including the qualifications of other county officers.
Because "[t]he best evidence of the voters' intent is the text of the provision itself," we begin there. Roseburg School Dist. v. City of Roseburg , 316 Or. 374, 378, 851 P.2d 595 (1993). Article VI, sections 6 through 8, address the selection of county officers. Those sections provide:
"Section 6. County Officers. There shall be elected in each county by the qualified electors thereof at the time of holding general elections, a county clerk, treasurer and sheriff who shall severally hold their offices for the term of four years.
"Section 7. Election or appointment of other officers. Such other county, township, precinct, and City officers as may be necessary, shall be elected, or appointed in such manner as may be prescribed by law.
"Section 8. Qualifications of county officers; location of offices. Every county officer shall be an elector of the county, and the county assessor, county sheriff, county coroner and county surveyor shall possess such other qualifications as may be prescribed by law. All county and city officers shall keep their respective offices at such places therein, and perform such duties, as may be prescribed by law."
Or. Const., Art. VI, §§ 6 - 8.
Based on the language of those sections, it is evident that Article VI, section 8, governs the qualifications for every county officer, *754 including county commissioner, whereas *759 sections 6 and 7 govern the manner in which county officers are selected. Section 6 identifies three specific officers that each county must elect and prescribes that those officers must be selected through a general election every four years. Section 7 allows for the creation of other county officers, including county commissioner, and, again, prescribes the manner in which those officers are selected: The positions can be filled through appointment or election "in such manner as may be prescribed by law." (Emphasis added.) See Livesley v. Litchfield , 47 Or. 248, 253-54, 83 P. 142 (1905) ( Article VI, section 7, gives authority to prescribe "the time and manner" in which municipal officers may be elected or appointed, which "simply empowers the legislature to provide the details for the holding of such election.").
Article VI, section 8, on the other hand, prescribes the qualifications for holding county office, as well as the location and duties of county officers. The qualifications clause of section 8 is separated into two parts. The first part explicitly applies to every county officer, whether it is one of those enumerated in section 6 or an "other officer" under section 7, and contains a single qualification-that the officer be an elector of the county. The second part contains added qualifications "as may be prescribed by law" only for the offices of county assessor, sheriff, coroner, and surveyor. As a result, Article VI, section 8, applies to the position of county commissioner, and because county commissioner is not one of the specific officers listed in the second part of the qualifications clause, status as an elector is the sole qualification for that position.
That understanding is consistent with the constitutional history of Article VI, section 8. As originally drafted, the qualifications clause of section 8 provided, "No person shall be elected or appointed to a county office who shall not be an elector of the county." Or. Const., Art. VI, § 8 (1857). In 1956, the voters adopted a referendum amending the qualifications clause to read as an affirmative requirement rather than as a minimum prerequisite. The amended section also permitted the legislature to impose additional qualifications for the positions of county coroner and surveyor; it provided, "Every county officer shall be an elector of the county, *760 and the county coroner and county surveyor shall possess such other qualifications as may be prescribed by law[.]" Or. Const., Art. VI, § 8 (1956). The official voters' pamphlet described the purpose of the ballot measure as follows:
" * * * [T]he proposed amendment to Section 8 merely authorizes the legislature to prescribe qualifications for the coroner and surveyor in addition to the requirement that such officials be electors of the county .
"As Article VI now stands, the surveyor and coroner are constitutional officers, for whom it is impossible to provide any qualifications beyond that of elector of the county ."
Official Voters' Pamphlet, General Election, Nov. 6, 1956, at 16-17 (emphases added). In 1972, section 8 was amended to add county sheriff to the list of officers whose qualifications could be regulated by the legislature. In the voters' pamphlet for that election, the argument in favor explained, "It is time for the people and the legislature to be able to fix minimum qualifications for the important office of sheriff. The proposed amendment merely enables such further, special qualifications to be prescribed." Official Voters' Pamphlet, General Election, Nov. 7, 1972, at 9. Section 8 was amended once more in 1974 to add county assessor to the list of specified officers for whom additional qualifications could be prescribed by law. The history of section 8 confirms that the voters intended to allow legislative action to require additional qualifications for only four specified officers. For all other county officers, including county commissioner, the sole qualification remains that the officer be an elector of the county.[4]
*755 Intervenor contends, however, that the 1958 adoption of the Oregon constitutional provision authorizing counties to adopt home-rule charters, *761 Article VI, section 10, together with the enactment of ORS 203.035[5] in 1973, confirms that qualifications for county officers are "matters of local concern" that ought to be regulated by county legislative action, regardless of whether a particular county has adopted a home-rule charter. The county home-rule provision was adopted by the people in 1958 and gives counties that adopt the home-rule charters authority to legislate on matters of local concern. Or. Const., Art. VI, § 10. However, that provision has no bearing in this case, because, as intervenor acknowledges, Douglas County has not adopted a home-rule charter. Thus, the only constitutional provisions relevant to the election of county officers in Douglas County are Article VI, sections 6 through 8. Likewise, the enactment of ORS 203.035, which confers on all counties the authority to legislate on matters of county concern, has no bearing on our interpretation of Article VI, section 8. See State v. Stoneman , 323 Or. 536, 542, 920 P.2d 535 (1996). Indeed, that statute explicitly provides that counties have "all powers over matters of county concern that it is possible for them to have under the Constitutions and laws of the United States and of this state ." ORS 203.035(2) (emphasis added). Thus, any authority conferred on Douglas County by ORS 203.035 is limited by the constitutional mandate of Article VI, section 8.
In sum, the circuit court did not err in concluding that the Douglas County ORS 203.035(2) violates Article VI, section 8, by imposing additional qualifications for the office of county commissioner. Thus, the court did not err in granting relators' writ of mandamus and entering a general judgment in relators' favor.
Affirmed.

Intervenor contends that the ordinance is constitutional under both the state and federal constitutions. Because we agree with the circuit court that the ordinance violates the Oregon Constitution, we do not address the parties' federal constitutional arguments.

Douglas County is not a home-rule county, so Article VI, section 10, does not apply to it. We nonetheless address intervenor's reliance on it as support for his argument about the distinction between qualifications for an office and an official's tenure in the office.

Article VI, section 8 (1857), provided, "No person shall be elected or appointed to a county office who shall not be an elector of the county[.]"

Intervenor urges us to look to other subsequently enacted legislative provisions that contain added qualifications for candidacy for other county officers, arguing that it is indicative of the voters' intentions with respect to Article VI, section 8. However, our task is to discern the intention of the voters who adopted the constitutional amendment, Roseburg School Dist. , 316 Or. at 378, 851 P.2d 595, and the enactment of subsequent legislation has no bearing on our analysis. As the Supreme Court has observed, "a state legislative interest, no matter how important, cannot trump a state constitutional command." State v. Stoneman , 323 Or. 536, 542, 920 P.2d 535 (1996).

ORS 203.035 provides, in part:
"(1) Subject to subsection (3) of this section, the governing body or the electors of a county may by ordinance exercise authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state, as fully as if each particular power comprised in that general authority were specifically listed in ORS 203.030 to 203.075.
"(2) The power granted by this section is in addition to other grants of power to counties, shall not be construed to limit or qualify any such grant and shall be liberally construed, to the end that counties have all powers over matters of county concern that it is possible for them to have under the Constitutions and laws of the United States and of this state."