IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| SENECA SUSTAINABLE ENERGY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5247 (Control); TC 5273; TC 5294;** |
| v. | ) | **TC 5323; TC 5355** |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | **ORDER GRANTING PLAINTIFF'S** |
| Defendant. | ) | **MOTION FOR SUMMARY JUDGMENT** |

These consolidated valuation cases involve the same property at issue in *Seneca Sustainable Energy, LLC v. Dept. of Rev*., 363 Or 782, 429 P3d 360 (2018), *aff'g* 22 OTR 263 (2016) and 21 OTR 366 (2014) (the "Prior Case"). The Prior Case involved the tax years 2012-13 and 2013-14, while these cases involve the five succeeding tax years. The substantive legal issue here is whether this court's judgment in the Prior Case[1] constituted an "order correcting the real market value of a separate assessment of property" within the meaning of Oregon's "adjudicated value" statute, ORS 309.115.[2] Before reaching that issue, the court must decide whether Defendant's most recent actions have rendered these cases moot, and if so, whether the court can and should decide the substantive issue nonetheless. The court holds that Defendant has made these cases moot by amending its answers to substitute new, reduced values

---

[1] *See Seneca Sustainable Energy, LLC v. Dept. of Rev*., TC 5193 (Control) Judgment at 2 (Dec 1, 2016) (the "Prior Case Judgment").

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2013 edition.

consistent with ORS 309.115, but the court exercises its discretion to decide the substantive issue, consistent with ORS 14.175 and in the interest of efficiently resolving these industrial property cases as the legislature has encouraged courts to do in ORS 305.487. The court concludes that the judgment in the Prior Case was an "order correcting the real market value of a separate assessment of property" for purposes of ORS 309.115(1), and the court orders in these cases that the assessment and tax rolls be corrected to show the real market values pled in Defendant's amended answers.

On November 8, 2018, the Oregon Supreme Court issued its opinion in the Prior Case, affirming this court's determination of the real market value ("RMV") of the subject property[3] for tax years 2012-13 and 2013-14. *Seneca*, 363 Or 782. Without belaboring the facts recited in the three opinions in the Prior Case, the Subject Property was exempt under the Oregon Enterprise Zone Act, but the Supreme Court held that this court nevertheless had jurisdiction to determine the property's RMV, and the Supreme Court affirmed the RMV that this court concluded following a trial. *Id.*

These cases involve the effect, if any, of the outcome of the Prior Case on the property's value for the next five tax years in sequence. Although each property tax year generally "stands

---

[3] The subject property in these five cases (the "Subject Property") comprises tax accounts numbered 5645217, 1851292 and 0348829 maintained by the Lane County Assessor, as well as tax accounts numbered 1857729 and 1857265. (*See* Complaints Ex 1, Case Nos. 180400G, 170381G, 160396G, 150514R, 140460D.) The Subject Property is an industrial facility that Defendant Department of Revenue, rather than the county assessor, appraises pursuant to ORS 306.126(2). Accounts 5645217, 1851292 and 0348829 were identified in the judgment in cases 5193 (tax year 2012-13) and 5208 (tax year 2013-14) (Prior Case Judgment at 2.) The property in accounts 1857729 and 1857265 is machinery and equipment and makes up less than 10 percent of the total RMV of the subject property. It is unclear from the record whether the property in accounts 1857729 and 1857265 was included as the subject of the Prior Case Judgment—it is conceivable, for example, that the latter two accounts were split off from one or more of the original three accounts. (*See* Ptf's Mot Summ J, Ex 10 at 3 (email correspondence between parties' counsel).) When preparing the form of judgment in these cases, counsel should confer and present a form of judgment that identifies whether accounts 1857729 and 1857265 are included. For convenience, the court refers to the "Subject Property" as including all five accounts.

on its own"[4] for purposes of determining value, the legislature has created an exception to that general rule in ORS 309.115. *See AKS LLC v. Dept. of Rev.*, ___OTR ___(Apr 18, 2019) (slip op at 14-15) (explaining purpose and circumstances leading to enactment of ORS 309.115). If the court orders an RMV correction, the statute preserves the corrected RMV for the next five years, although the assessor may increase the RMV for additions to the property, annual value "trending" and certain other adjustments. ORS 309.115(1) provides:

> "If the Department of Revenue, the board of property tax appeals or the tax court or other court enters an order correcting the real market value of a separate assessment of property and there is no further appeal from that order, except as provided under subsection (2) or (3) of this section, the value so entered shall be the real market value entered on the assessment and tax rolls for the five assessment years next following the year for which the order is entered."

The parties here disagree whether ORS 309.115 applies to the five tax years[5] 2014-15 through 2018-19 (the "Subject Years"). Defendant asserts that the statute does not apply to the Subject Property because it was exempt from tax for the tax years at issue in the Prior Case.

The procedural posture of these cases is relevant. As the litigation in the Prior Case proceeded, and as the annual December 31 deadline approached to challenge the value for each following year, Plaintiff filed what it refers to as a "protective" complaint for the same property. In the last six years, Plaintiff has filed five such protective complaints covering tax years 2014-15 through 2018-19 (the "Subject Years"). This court held all but the most recent of these five cases in abeyance during the Supreme Court appeal. The issue now before the court involves actions that Defendant took to change the assessment and tax rolls for each Subject Year after the Supreme Court's November 8, 2018, decision in the Prior Case.

---

[4] *ESCO Corp. v. Dept. of Rev.*, 307 Or 639, 646, 772 P2d 413 (1989).

[5] ORS 309.115(1) refers to "assessment years," which are calendar years. Each assessment year corresponds to a tax year that commences the following July 1. *See* ORS 308.007(2). For example, the 2018 assessment/calendar year corresponds to the "tax year" July 1, 2018 through June 30, 2019. As is customary, this order refers to the tax years at issue, rather than to their corresponding assessment years.

Initially, by letter dated December 5, 2018, Defendant issued a set of "value transmittal sheets"[6] to the Lane County Assessor, with one sheet per account per year, covering each of the two years before the Supreme Court as well as each of the five Subject Years. (Ptf's Mot Summ J 5247, 5323, 5355, Ex 8.) The letter and value transmittal sheets directed the county assessor to change the roll for each year by entering new RMVs that were substantially lower than the RMVs then on the roll. The parties now agree that the RMVs ordered in the December 5 sheets for the Subject Years are consistent with the RMVs that result from applying ORS 309.115 based on the Prior Case Judgment.

Five days later, by letter dated December 10, 2018, Defendant issued a new set of revised sheets to the county, again with copy to Plaintiff. (Ptf's Mot Summ J 5247, 5323, 5355, Ex 9.) The new set covered the same property tax accounts and the same tax years but reinstated the original assessment and tax roll values, reflecting an approximately threefold increase in total RMV compared to the values shown on the December 5 sheets. For example, the December 5 sheet for the largest account (No. 18512192) for tax year 2018-19 showed a value of $11,464,570, while the December 10 sheet showed a value of $35,166,790 for the same account and tax year. (Ptf's Mot Summ J 5355; Ptf's Ex 8 at 9; *Id*. 5355; Ptf's Ex 9 at 19.)

On December 21, 2018, counsel for Plaintiff initiated an email dialogue with counsel for Defendant about the two sets of value transmittal sheets. (Ptf's Mot Summ J, Ex 10.) Counsel for Plaintiff asserted that the values shown on the December 5 sheets for the Subject Years seemed consistent with Plaintiff's expectations of value based on application of ORS 309.115,[7]

---

[6] OAR 150-306-0110 provides for value transmittal sheets as the mechanism by which Defendant communicates the value of state-appraised property to the assessor. Defendant must issue a sheet before July 1 of each tax year, and it may later use one to direct an assessor to change the roll.

[7] For an overview of application of the adjudicated value statute see *AKS LLC v. Dept. of Rev.*, ___ OTR ___ (Apr 18, 2019)(slip op at 9-29).

but the December 10 values did not. Apparently receiving no response before the holidays, counsel for Plaintiff sent a second email on January 2, 2019, again seeking an explanation. On January 9, 2019, counsel for Defendant responded that "[t]here has not been an adjudication for the 2014 through 2018 tax years," and stating that the December 10 sheets reflected that fact. (*Id*. at 3.) Counsel for Plaintiff responded, stating the position that the adjudicated value statute required the values adjudged for tax year 2013-14 (the more recent of the two years at issue in the Prior Case) to apply to the five Subject Years, subject to any permissible adjustments. (*Id*. at 2.) Counsel for Defendant replied with Defendant's position that there had been no "assessment" of the Subject Property because it was exempt for tax year 2013-14; therefore, the adjudicated value statute did not protect the property from a higher assessment in the Subject Years. (*Id.*) The court's record of the email conversation ends January 30, 2019.

On March 11, 2019, Plaintiff filed its summary judgment motion for tax years 2014-15, 2015-16 and 2016-17 (consolidated cases numbered TC 5247). On April 17, 2019, Plaintiff filed similar motions for tax years 2017-18 (TC 5323) and 2018-19 (TC 5355).[8] All of the motions ask the court to order Defendant to comply with ORS 309.115 by using the 2013-14 real market value of Plaintiff's property as the basis to calculate the real market value of the Subject Property for the five Subject Years. (Ptf's Mot Summ J, TC 5247 at 3; *see* Ptf's Mot Summ J, TC 5323 at 2; Ptf's Mot Summ J, TC 5355 at 2.)

Defendant, meanwhile, on March 29, 2019, filed amended answers for tax years 2014-15, 2015-16 and 2016-17, admitting to an aggregate value for each year that reverted to the same aggregate values shown on the December 5, 2018, value transmittal sheet. In each amended answer, Defendant included a "request" that the court dismiss the complaint as moot. On

---

[8] The court has since consolidated the cases involving all five of the Subject Years.

April 17, 2019, Defendant filed similar amended answers for the two later tax years 2017-18 and 2018-19 that likewise reverted to the December 5 values for those years and included a request to dismiss those complaints as moot.[9]  Defendant ultimately also filed a response to each of Plaintiff's summary judgment motions, as well as a cross-motion for dismissal, taking the position that Plaintiff's complaints for each of the Subject Years were moot.

In its response and motion to dismiss for tax years 2014-15 through 2016-17, Defendant stated in part that it "does not concede that ORS 309.115 applies in these cases."  (Def's Resp & XMot, TC 5247 at 1.)  Defendant went on to state:  "However, defendant is not in a position to defend values higher than alleged in the Amended Answers filed today."  (*Id*. at 2.)  In a surreply opposing Plaintiff's motions, Defendant stated:  "If plaintiff's counsel had discussed the cases with defendant's counsel prior to filing motions, defendant would have suggested a settlement resolution resulting in Stipulated Judgments at the values pleaded in the Amended Answers. * * *  However, at this time, the new values have been transmitted to the county with a request to change the roll, and the county is changing the rolls.  Therefore, the cases are moot and defendant requests a Judgment of Dismissal."  (Def's Surreply at 2; *see also* Def's Response, TC 5323 at 1 (similar); Def's Response TC 5355 at 1 (similar).)

At oral argument on May 21, 2019, Defendant's counsel stated that Defendant had mailed a third set of revised value transmittal sheets to the county assessor and to Plaintiff shortly before, showing values consistent with the amended answers, but Plaintiff's counsel stated that her client had reported not having received its copies as of that morning.  In a May 30,

///

---

[9] Defendant also filed, on April 17, 2019, motions for leave to amend its answers that covered tax years 2017-18 and 2018-19 and (belatedly) the amended answers it already had filed covering tax years 2014-15 through 2016-17.  The court granted the motions.

2019, filing however, Plaintiff confirmed that it had by then received all expected refunds of tax. (Ptf's Mot for Jgmt on Pldngs, TC 5355 at 4 n 3.)

The court concludes that, by filing amended answers asserting RMVs that Plaintiff acknowledges are consistent with ORS 309.115,[10] Defendant has rendered these cases moot. *See Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 15, 376 P3d 288 (2016) (case in which a court's decision "no longer will have a practical effect on or concerning the rights of the parties" is moot). However, rather than simply dismiss these cases, the court applies the Oregon Supreme Court's recent approach in *Penn v. Board of Parole*, 365 Or 607, 613-24 (2019). The court starts by analyzing whether the requirements in ORS 14.175[11] are satisfied, then determines whether to exercise its discretion to apply the statute. ORS 14.175 provides:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:
>
> "(1) The party had standing to commence the action;
>
> "(2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and
>
> "(3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

*See also Hoggard v. Dept. of Rev.*, ___ OTR ___(June 7, 2019)(slip op at 7-11)(applying ORS 14.175). In this case, Defendant undertook an "act" when it issued the December 10, 2018,

---

[10] *See* Ptf's Mot Summ J, TC 5247 at 2; Ptf's Reply, TC 5247 at 2; Ptf's Mot Summ J, TC 5323 at 2; Ptf's Reply TC 5323 at 2; Ptf's Reply, TC 5355 at 3.

[11] As the Supreme Court reiterated in *Penn*, "ORS 14.175 does not necessarily represent the full scope of a court's constitutional authority to decide moot cases." 365 Or at 613 n 2. However, like that case, these cases present no need to look beyond the statute for authority to decide them. *Id.*

value transmittal sheets that undisputedly increased the property's RMV above the level that would be allowed if ORS 309.115 applies. There is no question that Plaintiff as the property owner was "aggrieved" by that act and thus had standing to commence the actions contesting those value increases. *See* ORS 305.275(1)(a). Defendant's act applied a "policy," *i.e*., Defendant's legal position that ORS 309.115 does not limit the RMV for later tax years if the property was exempt for the tax year for which the court determined the RMV. Defendant's counsel articulated this policy by email on January 16, 2019, (Ptf's Mot Summ J, TC 5247, Ex 10 at 2.) and again in Defendant's briefing. (Def's Resp & XMot, TC 5247 at 1-2.)

In considering whether the act of increasing the roll value, based on a policy against applying the adjudicated value statute, is capable of repetition, the court starts with Defendant's statement that it "does not concede" that ORS 309.115 applies. Defendant also stated that the only reason it was not pursuing the higher values was that it was "not in a position" to do so. While the meaning of that statement is unclear, it implies a unilateral[12] decision to give up in the current cases, at least for now, without foreclosing the possibility of pursuing the same issue if Defendant decides that circumstances it considers relevant have changed. In response to Plaintiff's stated concern that Defendant might issue yet another set of sheets with higher values reflecting Defendant's interpretation of ORS 309.115, Defendant declared:

> "Absent a drastic increase in electricity prices (which we and energy experts do not foresee), the department and county have no desire to prolong this unfortunate litigation with plaintiff. The department has already paid plaintiff well over $600,000 in attorney fees, costs and disbursements."

/ / /

---

[12] Defendant asserts in briefing: "If plaintiff's counsel had discussed the cases with defendant's counsel prior to filing motions, defendant would have suggested a settlement resolution resulting in Stipulated Judgments at the values pleaded in the Amended Answers." (Def's Surreply at 2.) But as recounted above, the parties *were* in dialogue, at Plaintiff's request, for several weeks until at least January 23, 2019, based on counsel's email string that ends with Defendant's counsel adhering to the position that ORS 309.115 does not apply. (Ptf's Mot Summ J, Ex 10.)

(Def's Resp, TC 5355 at 4 n 2.) In the first quoted sentence, Defendant hedges; despite its reference to a "drastic" increase in electricity prices, Defendant retains complete control over whether it will order another value increase. And any assurance that the first sentence might offer is undermined by the second sentence's baffling reminder that this court awarded attorney fees against Defendant in the Prior Case, based largely on "objectively unreasonable" appraisal work by Defendant's trial expert. *Seneca Sustainable Energy, LLC v. Dept. of Rev.*, ___OTR ___ (Apr 6, 2018) (slip op at 10-14.). The court concludes that there is a possibility that Defendant may seek to apply its policy and again increase the values of the Subject Property for some or all of the Subject Years.

Just as importantly, the court assumes from Defendant's statement of non-concession that Defendant views its interpretation of ORS 309.115 as correct and would see itself as obligated to act upon it in a future case involving different property and other taxpayers.[13] The opportunity or need for Defendant to take this position could arise in any case in which three circumstances are present: (1) an assessor is required to record the RMV of exempt property on the rolls, (2) a dispute arises about whether the RMV so recorded is correct, and (3) the RMV during the exempt period has consequences at a later time when the property has ceased to be exempt. Such a case could arise not only with other property exempt under the Oregon Enterprise Zone Act, but also with property exempt under any other provision that requires recapture of taxes when the property is removed from exemption.

Circumstance (1), the recordation of the RMV of exempt property, is required not only under the specific text of the Enterprise Zone Act, as the Supreme Court discussed (*Seneca*, 363

---

[13] *Penn* has definitively clarified that "ORS 14.175(2) requires that the act of the public body that no longer is affecting the plaintiff or complaining party be reasonably susceptible to repetition *as to someone*." 365 Or at 622 (emphasis added).

Or at 792), but also for *all* exempt properties, according to Defendant's own rule.[14]  *See* OAR 150-308-0310(1) (requiring that assessment roll show the RMV of land and all buildings); 150-308-0310(2) (requiring that roll show "classification code" of each parcel); 150-308-0310(8) (listing all potentially applicable classification codes, including dozens of combinations specifically and uniquely applicable to exempt property).  Circumstance (2), the possibility of a dispute over RMV, is sufficiently common that it accounts for a substantial portion of this court's docket.  Circumstance (3), the possibility of a later recapture of tax, arises not only under the Enterprise Zone Act, but also in the case of cemetery property, to name one example.  *See* ORS 307.155 (requiring assessment of additional tax equal to "taxes that otherwise would have been assessed" for up to 10 years before land ceased to be held or used for cemetery or crematory purposes); *see also, e.g.,* ORS 307.513 (certain nonprofit housing).  The court concludes both that the act Plaintiff complains of is capable of repetition as to Plaintiff, and that Defendant maintains a policy position that makes it likely to act similarly as to others.

The court turns to the final requirement for application of ORS 14.175:  that the challenged act or policy be likely to evade judicial review.  Given the parties' long history of litigation over the Subject Property, the court focuses on the possibility that Defendant might act as to a different taxpayer and different property.  The act in question would be a refusal (based on Defendant's policy discussed above) to apply ORS 309.115 to a tax year *after* the year for which the RMV was adjudicated by this court, by Defendant in its adjudicatory capacity, or by a county board of property tax appeals.  The court is not aware of any law requiring Defendant to notify a taxpayer specifically of such a refusal.  Therefore, a taxpayer's first indication would likely be the annual property tax statement, which by law is issued in October.  *See*

ORS 311.250(1). The deadline to contest the property's value generally is December 31--requiring an appeal to be filed in a matter of weeks. *See* ORS 309.100(2) (locally assessed and appraised non-industrial property); ORS 305.403(2) (state-appraised industrial property). That taxpayers often miss that deadline is well documented in case law and has moved the legislature to create an exception for certain residential property in limited circumstances. *E.g., Gilbert-Bamrick v. Multnomah County Assessor*, TC-MD 000042E, WL 290969 (Mar 15, 2000) (taxpayers acknowledged missing December 31 deadline); *see* ORS 305.288 (offering relief from untimeliness for certain residential property appeals). The court concludes that the lack of a notice requirement and the short window to challenge a property's value is comparable to election periods and other situations that courts have held can cause an act to evade review. *E.g., Couey v. Atkins*, 357 Or 460, 482-83, 355 P3d 866 (2015) (elections); *State ex rel Smith v. Hitt*, 291 Or App 750, 754, 424 P3d 749 (2018) (same); *Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 16-19, 376 P3d 288 (2016) (timelines for administrative and judicial review). The court concludes that these cases satisfy all requirements of ORS 14.175.

The foregoing analysis under ORS 14.175 also persuades the court to exercise its discretion to decide the substantive issue. First, with respect to the possibility that Defendant might act again on the Subject Property, the court finds that resolving the substantive issue now is consistent with the legislature's policy to "strongly encourage" this court to resolve industrial property tax appeals "quickly and efficiently." *See* ORS 305.487(2). Second, the court also finds that "broader relevance" of the type the Supreme Court found in *Penn* is present here. Defendant maintains a particular interpretation of ORS 309.115 that it could seek to apply after another taxpayer successfully challenges the RMV of other property for a year in which the property is exempt. Without speculating as to the full range of situations to which Defendant

might apply its interpretation, the court finds it sufficient that Defendant could apply its policy in another enterprise zone case, as those cases often involve larger properties likely to be the subject of value litigation. *See* ORS 285C.185 (requiring minimum property cost for regular enterprise zone benefit); ORS 285C.412 (minimum cost for long-term rural enterprise zone benefit). The court takes judicial notice that, following a recent law change, Oregon localities now maintain 73 enterprise zones that are sponsored by 30 of the state's 36 counties, approximately one-half the state's ports and cities and two of the nine federally recognized tribes. *See* https://www.oregon4biz.com/Oregon-Business/Tax-Incentives/Enterprise-Zones/Sponsor/; Or Laws 2015, ch 648, § 25 (repealing ORS 285C.080, which previously limited the number of zones statewide); *see United Streetcar, LLC v. Dept. of Rev.,*___OTR ___(Jul 11, 2019) (slip op at 3) (describing eligibility for "standard" three-year enterprise zone exemption and noting variations that confer exemption for up to 15 years).

The court considers one additional factor, peculiar to these cases, in deciding whether to exercise its discretion. The court is mindful that a judgment in Plaintiff's favor would, by definition, be a new "order correcting the real market value of a separate assessment of property," causing ORS 309.115 to once again protect the Subject Property from an RMV increase for up to five years, commencing with the tax year 2019-20 (the year after the last of the Subject Years). The court does not desire to create a "windfall" for Plaintiff by now determining the RMV of the property, but the court has concluded that there is little to no risk of that. Even ignoring the equities (Defendant prompted this dispute when it issued the December 10 sheets reinstating the values it had unsuccessfully argued for in the Prior Case), ORS 309.115 does not create a windfall. This court determined the Subject Property's RMV after a multi-day trial in the Prior Case, and the Supreme Court upheld that RMV. The Subject Property consists

overwhelmingly of industrial buildings and machinery and equipment. This type of property generally declines in value from one year to the next, due to wear and tear, obsolescence and other depreciation factors, in contrast to land or residential or commercial structures, which may appreciate based on market conditions.[15] Subsection (3) of ORS 309.115 assures that, if Plaintiff adds property to the facility (net of retirements), the county will get the benefit of any RMV increase attributable to those additions, as well as the benefit of any positive trending. The legislative history makes clear that the purpose of ORS 309.115 was not to give taxpayers a windfall, but rather a temporary reprieve to prevent an assessor from ignoring the value determined at trial and simply reinstating the same value for the next year after the one adjudicated--the very act that occurred in these cases when Defendant issued the December 10, 2018, value transmittal sheets. *See AKS LLC* (slip op at 14-15). The court therefore exercises its discretion to decide the substantive issue and turns to that analysis now.[16]

Defendant maintains the position that ORS 309.115 does not apply in these cases because "the exempt property was not assessed in either 2012-13 or 2013-14, the two tax years addressed in the [tax] court's order." (Def's Response, TC 5237 at 1-2.) Defendant argues that the basis of

---

[15] Evidence for this is found in the Lane County Assessor's published "changed property ratio" for state-appraised industrial property and machinery and equipment, which in each case was 1.0 for tax years 2014-15 through 2017-18.
*See*,https://lanecounty.org/UserFiles/Servers/Server_3585797/File/Government/County%20Departments/Assessment%20and%20Taxation/Valuation/2017%20CPR%20Report.pdf. *See generally AKS LLC* (slip op at 18-21) (examples of application of changed property ratio.

[16] Defendant cites *FedEx Ground Package System, Inc. v. Dept. of Rev.*, 20 OTR 547 (2012) in urging this court to respond to the mootness in these cases by dismissing them. (Def's Response, TC 5355 at 1.) In *FedEx*, a worker classification payroll tax case, this court concluded that Defendant had rendered the case moot, and with it any claims of taxpayer for attorney fees, by announcing during a hearing before trial that it had "abated the assessment and would take no action to renew the assessment * * *." 20 OTR at 548. *FedEx*, which applied prior Oregon Supreme Court precedent, is distinguishable on its facts. In addition to noting Defendant's express statement of intent to take no action with respect to the specific taxpayer, the court found that there was "no possibility of a practical effect on the tax liability of *a* taxpayer" due to the "inherently factual" nature of the case, stating, "this is not a case where anyone could conclude that any wrong, even if one existed, would be capable of repetition or would have collateral consequences." *Id.* at 549 & n 2 (emphasis added). Later Oregon Supreme Court cases have clarified the discretionary authority of Oregon courts to decide moot cases, both under ORS 14.175 and otherwise; the fact that this court did not choose to do so in *FedEx* has no significance for these cases.

the Supreme Court's affirmance was that taxpayer was "aggrieved * * * by the public benefit contribution requirement, and assessment of the land, not because the court found the exemption on the co-gen property to be an assessment." (*Id.* at 2.) But Defendant misreads ORS 309.115(1), focusing only on the term "assessment" and ignoring the complete phrase of which it is a part. *Cf. Comcast Corp. v. Dept. of Rev*, 356 Or 282, 297-98, 337 P3d 768 (2014) (determining at the outset of its analysis that phrase "data transmission services" has no familiar or common meaning; rejecting as "futile" an approach that would require the court to "cobble together definitions of the individual words to make collective sense of the phrase as a whole"); *Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005) (analyzing meanings of "mental disease or defect" and "personality disorder" as complete phrases "although they consist of common individual words").

ORS 309.115 requires that a court (or, as the case may be, Defendant or a local board of property tax appeals) have entered "an order correcting the real market value of a *separate assessment of property* * * * ." ORS 309.115(1) (emphasis added). As this court recently has explained in detail, the phrase "separate assessment of property" has an established meaning, generally referring to particular property, as opposed to a class of property. *See Gray v. Dept. of Rev.,* ___OTR ___ (Dec 20, 2018) (slip op at 9-10). The phrase also is found in a related statute, ORS 306.115, which declares Defendant's power to change or correct the assessment or tax roll as part of Defendant's broad duty to supervise and control the state's far-flung property tax system in accordance with law. Paragraph (3) of ORS 306.115 allows Defendant to order a change or correction "applicable to a separate assessment of property" for up to three years, while paragraph (2) of the same statute allows Defendant to order a county assessor to make a single-year roll change "applicable to all real or personal property of the same class or in the

same area." The adjudicated value statute recapitulates this distinction, generally freezing the RMV after an order correcting the RMV of a "*separate assessment of property*," while allowing the assessor to adjust that frozen RMV to reflect "[a]nnual trending or indexing applied to *all properties of the same property class* in the county, or *within clearly defined areas of the county*," among other adjustments. ORS 309.115(1), (2)(a) (emphasis added). *See also Gray* (slip op at 24-28) (origin of the phrase "separate assessment of property" as used in ORS 306.115).

Defendant invites the court to consider whether property should be treated as "assessed" in a year when no tax is due because of an exemption. To do so would be a frolic and a detour.[17] All that is necessary is to determine whether the court's correction was of the RMV of the Subject Property as separately identified, as opposed to a correction of the RMV of an entire class or area of property. The Subject Property was separately identified by unique account numbers. Plaintiff listed them in its complaints for tax years 2012-13 and 2014-15 and in the complaints for each of the five Subject Years. Defendant used them numerous times, in each set of value transmittal sheets for each tax year. The accounts are the same accounts for which this court in the Prior Case issued a judgment that specifically "ordered" defendant "to * * * correct the 2012-2013 and 2013-2014 assessment and tax rolls * * * to reflect the reductions in the real market value of the subject property * * *." (Prior Case Judgment at 2.) The language of the Prior Case Judgment tracks almost exactly the language of the adjudicated value statute. There is no question that the Prior Case Judgment was an "order correcting the real market value of a separate assessment of property" within the meaning of ORS 309.115(1).

---

[17] The court leaves for another day the task of sorting out in which circumstances the freestanding word "assessment" might mean "valuation" of property, the process of entering all relevant data about the property onto the annual assessment roll, the computation of tax owed with respect to the property, or something else. *See Gray* at 12 nn 20-21.

The court concludes that Plaintiff is entitled to summary judgment in these cases. That decision makes it unnecessary to decide Plaintiff's motion for entry of judgment, filed after oral argument with respect to the most recent of the five tax years. The court directs Plaintiff to prepare a form of judgment covering each of the Subject Years, determining that the RMV of the Subject Property is as shown in Defendant's amended answers. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted.

Dated this ___ day of December, 2019.


_____

***THIS DOCUMENT WAS SIGNED BY JUDGE ROBERT T. MANICKE ON DECEMBER 9, 2019, AND FILED THE SAME DAY. THIS IS A PUBLISHED DOCUMENT.***